RECEIVED

JAN 1 5 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  RONALD J. TENPAS
2  Assistant Attorney General
   Environment & Natural Resources Division
3  United States Department of Justice
   Washington, DC  20530

4  LORI JONAS (Bar # 158268)
5  Senior Attorney
   Environmental Enforcement Section
6  Environment and Natural Resources Division
   United States Department of Justice
7  P.O. Box 7611 Ben Franklin Station
   Washington, DC 20044
8  (202) 514-4080 (telephone); (202) 514-2583 (facsimile)
   lori.jonas@usdoj.gov

9  JOSEPH P. RUSSONIELLO
10 United States Attorney
   Northern District of California
11 CHARLES O'CONNOR (State Bar # 56320)
   Assistant United States Attorney
12 450 Golden Gate Avenue, 11th Floor
   San Francisco, California 94102
13 (415) 436-7200 (telephone); (415) 436-7221 (facsimile)
   Attorneys for Plaintiff United States of America

14 (Additional Attorneys Listed on Following Page)

FILED

FEB - 9 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

15
16              **UNITED STATES DISTRICT COURT**
17              **NORTHERN DISTRICT OF CALIFORNIA**
18

19 UNITED STATES OF AMERICA and          Case No. CV 09-0186 MEJ
   PEOPLE OF THE STATE OF
20 CALIFORNIA *ex rel.* CALIFORNIA STATE   STIPULATED ORDER FOR
   WATER RESOURCES CONTROL BOARD          PRELIMINARY RELIEF
21 and CALIFORNIA REGIONAL WATER
   QUALITY CONTROL BOARD, SAN
22 FRANCISCO BAY REGION,

23                      Plaintiffs,
   v.
24
   EAST BAY MUNICIPAL UTILITY
25 DISTRICT,

26                      Defendant.

27
28

STIPULATED ORDER              Page 1 of 42

EDMUND G. BROWN JR.
Attorney General of the State of California
JOHN DAVIDSON (State Bar No. 50364)
Supervising Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 436-7200 (telephone); (415) 436-7221 (facsimile)
john.davidson@doj.ca.gov
Attorneys for Plaintiff People of the State of California ex rel. California State Water Resources
Control Board and California Regional Water Quality Control Board, San Francisco Bay Region

JYLANA D. COLLINS (State Bar No. 107949)
VERONICA Y. FAUNTLEROY (State Bar No. 111506)
CRAIG S. SPENCER (State Bar No. 78277)
Office of General Counsel
East Bay Municipal Utility District
375 Eleventh Street
P.O. Box 24055
Oakland, CA 94607-4240
(510) 287-0174 (telephone); (510) 287-0162 (facsimile)
veronica@ebmud.com

BRIAN S. HAUGHTON (State Bar No. 111709)
DONALD E. SOBELMAN (State Bar No. 184028)
Barg Coffin Lewis & Trapp, LLP
350 California Street, 22nd Floor
San Francisco, California 94104-1435
(415) 228-5400 (telephone); (415) 228-5450 (facsimile)
BSH@BCLTLAW.com

Attorneys for Defendant, East Bay Municipal Utility District

1

TABLE OF CONTENTS

2   I.       JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

3   II.      APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

4   III.     OBJECTIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

5   IV.      DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

6   V.       WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

7   VI.      ANNUAL REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . .   23

8   VII.     REVIEW AND APPROVAL OF DELIVERABLES . . . . . . . . . . . . . . . . . . .   24

9   VIII.    STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

10  IX.      FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

11  X.       DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

12  XI.      INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . .   30

13  XII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . .   31

14  XIII.    COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

15  XIV.     NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

16  XV.      RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

17  XVI.     MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

18  XVII.    TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

19  XVIII.   PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

20  XIX.     SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

21  XX.      INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

22  XXI.     HEADINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

23  XXII.    PARTIAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

24

25

26

27

28

1  WHEREAS:

2  1.      Plaintiff United States of America ("United States"), on behalf of the United

3  States Environmental Protection Agency ("EPA"), and Plaintiff People of the State of California

4  *ex rel.* California State Water Resources Control Board ("State Water Board") and California

5  Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board")

6  filed a Complaint against the Defendant East Bay Municipal Utility District ("EBMUD")

7  pursuant to Section 309 of the Clean Water Act ("CWA"), 33 U.S.C. § 1319, and Cal. Water

8  Code Sections 13376, 13385 and 13386.

9  2.      The Complaint alleges that EBMUD has discharged pollutants without a permit in

10  violation of CWA Section 301(a), 33 U.S.C. § 1311(a), and Cal. Water Code Section 13376; and

11  has discharged pollutants in violation of the terms and conditions of its National Pollutant

12  Discharge Elimination System ("NPDES") Permits. The Complaint also alleges that EBMUD

13  will not be able to comply with its next NPDES Permit, which was proposed on November 14,

14  2008.

15  3.      EBMUD receives wastewater from seven East Bay wastewater collection agencies

16  ("Satellites") with a total population of approximately 650,000. Each Satellite owns and operates

17  its own wastewater collection system, which delivers wastewater to EBMUD's interceptor

18  system. The interceptor system transports wastewater to EBMUD's year-round main wastewater

19  treatment plant near the eastern anchorage of the Bay Bridge ("MWWTP"). During wet weather,

20  EBMUD at times discharges wastewater from three wet weather facilities, located at 2755 Point

21  Isabel Street, Richmond; 225 5th Avenue, Oakland; and 5597 Oakport Street, Oakland

22  (collectively the "WWFs"). The Satellites' and EBMUD's connected systems shall be referred to

23  collectively as the "East Bay Sanitary Sewer System."

24  4.      Inflow and infiltration (I/I) of stormwater into the collection systems and private

25  sewer laterals during severe wet weather events – via mis-connections, cracks and other

26  imperfections in system pipes, joints and manholes – can lead to a 10-fold increase in the volume

27  of wastewater that reaches EBMUD's interceptor system.

28

5.      Beginning in 2003, the Regional Water Board, EPA Region IX, EBMUD and citizen stakeholder groups participated in a two-year process of developing a revision to the NPDES permit for EBMUD's WWFs.

6.      As a result of this process, the Regional Water Board adopted a revised WWF Permit and Time Schedule Order ("TSO") on September 21, 2005, effective October 1, 2005. Neither the Permit nor the TSO was appealed, but in early 2007, the State Water Board *sua sponte* undertook review on its own motion. At the conclusion of that review, on May 1, 2007, the State Water Board adopted an Order stating, in part:

> We have concluded that the San Francisco Bay Water Board must revise the EBMUD permit to include effluent limits based on secondary treatment standards. Likewise, the TSO must be revised to ensure that the endpoint for the EBMUD studies and investigations is either to achieve secondary treatment standards or cease discharge from the three wet weather facilities.

> This does not mean that EBMUD must construct secondary treatment plants at the three facility sites. The ideal solution for the East Bay communities may, in fact, be to eliminate excess wet weather flows through I/I improvements.

7.      The Parties agree that:

- eliminating discharges from – rather than further treatment at – the WWFs is the optimal way to further reduce the East Bay sanitary sewer system's wet-weather-related water-quality impacts to San Francisco Bay, and

- the means of pursuing this objective is to reduce wet-weather flows in the collection systems and in private sewer laterals, which will reduce impacts to San Francisco Bay by reducing the frequency and volume of EBMUD's wet weather discharges.

8.      EBMUD does not admit any liability to Plaintiffs for the transactions or occurrences alleged in the Complaint.

9.      The Parties desire to avoid further litigation and to work cooperatively on issues relating to wet weather flows.

10.     The Parties recognize that, to fully develop and implement solutions to the issues relating to wet weather flows, further analysis will be needed of the technical issues associated with these flows in the EBMUD service area.  In addition, the Parties recognize that successful

1   implementation of a viable remedy to these issues will require the active participation of the

2   Satellites. Therefore, the Parties recognize and agree that this Stipulated Order for Preliminary

3   Relief ("Stipulated Order") is a partial remedy to address these issues and is without prejudice to

4   future action by the United States and/or the State (including, but not necessarily limited to,

5   additional enforcement litigation involving the Parties and, possibly, the Satellites) to develop

6   and implement a final remedy to address the violations alleged in the Complaint. The Parties

7   further recognize that the Satellites will be informed of and need to cooperate with the work

8   being implemented pursuant to this Stipulated Order and, therefore, mutually undertake to engage

9   in outreach to and dialogue with the Satellites with regard to all of the work undertaken pursuant

10  to this Stipulated Order.

11      11.     The Parties recognize, and the Court by entering this Stipulated Order finds, that

12  (1) this Stipulated Order has been negotiated by the Parties in good faith and will facilitate the

13  ultimate resolution of the claims stated in the Complaint, and (2) this Stipulated Order is fair,

14  reasonable, and in the public interest.

15      NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as

16  follows:

17                      I.      JURISDICTION AND VENUE

18      12.     This Court has jurisdiction over the subject matter of this action pursuant to 28

19  U.S.C. §§ 1331, 1345, 1355, and 1367, Section 309(b) of the Clean Water Act, 33 U.S.C. §

20  1319(b), and California Water Code § 13385; and the Court has jurisdiction over the Parties.

21  Venue lies in this District pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. §§

22  1319(b), and 28 U.S.C. §§ 1391(b) and 1395(b) because this is the District in which EBMUD is

23  located. For purposes of this Stipulated Order, Defendant agrees that the Complaint states claims

24  upon which relief may be granted pursuant to Section 309 of the Clean Water Act and pursuant to

25  California Water Code Sections 13385 and 13386.

26      13.     Notice of the commencement of the United States' action was provided to the

27  Regional Water Board pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. §§ 1319(b).

28

## II.   APPLICABILITY

14.   The provisions of this Stipulated Order shall apply to and be binding upon the Parties and any successors or other entities or persons otherwise bound by law.

15.   EBMUD shall provide a copy of this Stipulated Order to the Members of EBMUD's Board of Directors, General Manager, and all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Stipulated Order, as well as to any contractor retained to perform work required under this Stipulated Order. EBMUD shall condition any such contract upon performance of the work in conformity with the terms of this Stipulated Order.

16.   In any action to enforce this Stipulated Order, EBMUD shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Stipulated Order.

17.   EBMUD shall provide a copy of this Stipulated Order to any successor in interest at least 30 days prior to transfer of that interest, and simultaneously shall verify in writing to Plaintiffs that such notice has been given. Absent agreement of the Parties or order of the Court, any sale or transfer of EBMUD's interests in, or operating role with respect to, the WWFs shall not in any manner relieve EBMUD of its responsibilities for meeting the terms and conditions of this Stipulated Order.

## III.   OBJECTIVES

18.   The objectives of this Stipulated Order are to develop remedial measures to address the excess wet weather flow issues associated with EBMUD's discharges in furtherance of the objectives of the Clean Water Act as set forth in Section 101 of the Act, 33 U.S.C. § 1251, and the objectives of the Porter-Cologne Water Quality Control Act as set forth at California Water Code Sections 13000, 13001, 13370, and 13372. The Parties recognize that the work required by this Stipulated Order will not fully resolve these issues. It is the intent of the Parties to use information developed pursuant to this Stipulated Order to tailor a final remedy that, when implemented, will resolve the pending litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  DEFINITIONS

19.     Unless otherwise defined herein, terms used in this Stipulated Order shall have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and the regulations promulgated thereunder.  Whenever terms set forth below are used in this Stipulated Order, the following definitions shall apply:

"Basin" shall mean the major divisions of the Satellite collections systems established in the East Bay I/I Study prepared by EBMUD and the Satellites from 1980-1986 ("Study"), or as modified by changes in collection system configuration due to sewer improvements constructed since completion of the Study or more accurate delineation of the boundaries established in the Study.  In general, a basin represents an area of the collection system discharging to a single point on the EBMUD interceptor system or several points in close proximity.  Attached as Exhibit A is an illustrative map of Basins in the EBMUD wastewater service area; this map is provided for illustrative purposes only and does not necessarily reflect the locations of the Basins that will be determined in documents produced by EBMUD pursuant to this Stipulated Order.

"Capacity Flow Limits" shall mean limitations on the wet weather flows at specified locations calculated pursuant to this Stipulated Order that eliminate (1) the need for discharges from the WWFs and (2) flows to the MWWTP in excess of the design capacity of any of the MWWTP's treatment processes.

"Complaint" shall mean the complaint filed in this matter by the United States on behalf of Plaintiffs.

"CWA" shall mean the Clean Water Act, 33 U.S.C. §§ 1251 et seq.

"Day," regardless of whether it is capitalized, shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Stipulated Order, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.  Wherever this Stipulated Order requires an act to be performed by a specified date (e.g., by December 31, 2011 or by August 31 of each year), and the date falls on a Saturday, Sunday, or federal or State holiday, the time for

---

STIPULATED ORDER                Page 8 of 42

1   performing the act shall be extended until the close of business of the next working day.

2          "Deliverable" shall mean any written report or other document required to be submitted

3   for Plaintiffs' approval pursuant to this Stipulated Order.

4          "East Bay Sanitary Sewer System" shall mean; collectively, the Satellites' collection

5   systems and EBMUD's interceptor system, WWFs, MWWTP and related wastewater handling

6   facilities.

7          "EBMUD" shall mean East Bay Municipal Utility District.

8          "Effective Date" shall mean the date upon which this Stipulated Order is entered by the

9   Court.

10         "EPA" shall mean the United States Environmental Protection Agency.

11         "Inflow and infiltration" or "I/I" shall mean the introduction of stormwater and

12   groundwater into EBMUD's interceptor system, the Satellites' collection systems and private

13   sewer laterals during wet weather events via direct connections, mis-connections, cracks and

14   other imperfections in system pipes, joints and manholes.

15         "Interceptor Connection Point" shall mean a point at which a Satellite's collection system

16   is connected to EBMUD's interceptor system.

17         "Paragraph" shall mean a portion of this Stipulated Order identified by an Arabic

18   numeral.

19         "Parties" shall mean the United States, the State Water Board, the Regional Water Board

20   and EBMUD.

21         "Plaintiffs" shall mean the United States, the State Water Board, and the Regional Water

22   Board.

23         "Regional Water Board" shall mean the California Regional Water Quality Control

24   Board, San Francisco Bay Region.

25         "Satellite" shall mean each cities and district that own or operate wastewater collection

26   systems from which EBMUD's interceptor system receives wastewater.  As of the date of entry

27   of this Stipulated Order, the Satellites are the cities of Alameda, Albany, Berkeley, Emeryville,

28

1  Oakland, and Piedmont; and the Stege Sanitary District.

2          "Section" shall mean a portion of this Stipulated Order identified by an uppercase Roman
3  numeral.

4          "State" shall mean the State of California.

5          "State Water Board" shall mean the California State Water Resources Control Board.

6          "Stipulated Order" shall mean this Stipulated Order.

7          "Sub-Basin" shall mean the subdivision of sewer basins as established in the East Bay I/I
8  Study, or as modified by changes in collection system configuration due to sewer improvements
9  constructed since completion of the Study or by more accurate delineation of the boundaries
10  established by the Study.  Attached as Exhibit A is an illustrative map of Sub-Basins in the
11  EBMUD wastewater service area; this map is provided for illustrative purposes only and does not
12  necessarily reflect the locations of the Sub-Basins that will be determined in documents produced
13  by EBMUD pursuant to this Stipulated Order.

14          "Subsection" shall mean a portion of this Stipulated Order identified by a capital letter.

15          "United States" shall mean the United States of America.

16          "WWFs" shall mean EBMUD's three wet weather facilities, located at 2755 Point Isabel
17  Street, Richmond, 225 5th Avenue, Oakland, and 5597 Oakport Street, Oakland, respectively.

18                              V.    WORK

19      A.    FLOW MONITORING/DATA ASSESSMENT

20      20.    Within 210 days after the Effective Date, EBMUD shall submit a Flow
21  Monitoring/Data Assessment Program to EPA and the Regional Water Board for approval as
22  provided for in Section VII.  The Flow Monitoring/Data Assessment Program shall be designed
23  to generate sufficient and accurate information to support development of the Flow Modeling and
24  Limits Report ("FMLR") provided for in Subsection B.  Prior to submission of the Flow
25  Monitoring/Data Assessment Program to EPA and the Regional Water Board, EBMUD shall
26  conduct a workshop to which Plaintiffs and each of the Satellites shall be invited where EBMUD
27  shall present the draft Flow Monitoring/Data Assessment Program and solicit comments.

28

1  EBMUD shall allow no less than 30 days for the submission of comments.  All comments

2  provided as a result of this workshop, as well as any EBMUD responses, shall be submitted to

3  EPA and the Regional Water Board along with the Flow Monitoring/Data Assessment Program.

4  The Flow Monitoring/Data Assessment Program shall include the following three elements (as

5  more fully explained in the following three Paragraphs):

6     •   A Flow Measurement Work Plan ("FMWP").

7     •   A Rainfall Measurement Work Plan ("RMWP").

8     •   A Data Assessment Work Plan ("DAWP").

9       21.    The FMWP shall consist of a map that identifies and plots all known Interceptor

10  Connection Points and all known points at which one Satellite's collection system discharges into

11  another Satellite's collection system ("Satellite-Satellite Connection Points"), and a schedule for

12  installation of flow monitoring devices sufficient to measure and record flows in EBMUD's

13  interceptor system and the Satellites' collection systems during both dry weather and rainfall

14  events.  The FMWP shall be designed to provide measurement of flows no less frequently than

15  every 15 minutes.  The FMWP shall include procedures for calibration, maintenance and repair

16  of flow-monitoring devices in accordance with the manufacturer recommendations.  Flow

17  monitoring devices shall include flow monitors, data recording equipment, and any other

18  ancillary equipment needed for measurement and recording of flow data.

19     •   The FMWP shall identify places in the EBMUD interceptor system and Satellite

20         collection systems where EBMUD proposes to maintain flow monitors. The flow

21         monitoring program shall include, but not be limited to, assessing flows at selected

22         Interceptor Connection Points (the total of which shall account for at least 90% of

23         all flows based on the estimates of Basin flow contributions developed from 2006

24         flow monitoring data and modeling results), selected locations on the EBMUD

25         interceptor system, and at significant Satellite-Satellite Connection Points.  A

26         "significant" Satellite-Satellite Connection Point is one that includes an upstream

27         tributary area with either (1) more than approximately 200 sewer connections or

28

(2) more than 5,000 feet of mainline sewer pipe. The FMWP shall be designed to quantify I/I contributions to EBMUD's interceptor system from each of the Basins within the Satellites' collection systems to enable the Parties to compare the Basins' respective I/I contributions to EBMUD's interceptor system.

- The FMWP shall include a technical report describing the flow monitoring devices intended to be employed in the flow monitoring program including, but not limited to, providing information on accuracy, reliability, and durability of the proposed monitoring technology. The technical report shall document the level of accuracy expected of the metering equipment based upon manufacturer's data, and describe potential physical and hydraulic conditions that may limit the in-situ flow monitoring accuracy or repeatability. The report shall include a quality assurance/quality control element to identify procedures designed to maximize the level of accuracy achieved. The report shall also include information as to the inventory of monitors (and ancillary equipment) needed to implement the flow monitoring program (including spare parts).

- The FMWP shall include a flow monitor installation schedule that shall provide for the completion of installation of flow monitoring devices no later than December 1, 2009 (and by December 1 of each subsequent year), so that two years of wet weather flow data can be collected before the deadline for submission of the FMLR. The FMWP shall also include a recommended schedule for calibration, maintenance and interrogation of flow monitoring devices.

22.    The RMWP shall be designed to document rainfall totals, duration and intensity as a function of time within the Basins tributary to EBMUD's interceptor system.

- The RMWP shall be designed to generate information of sufficient detail to describe the rainfall totals, duration and intensity as a function of time within specific Basins tributary to EBMUD's interceptor system and, where feasible and appropriate, similar information within specific Sub-Basins within Satellite

1   collection systems.

2   • The RMWP shall be coordinated with the FMWP so that data generated by the

3   RMWP can be correlated with the FMWP with sufficient precision and reliability

4   that technically appropriate conclusions can be drawn as to how flows within

5   EBMUD's interceptor system and the Satellite's collection systems respond to

6   particular rainfall events.  To achieve this objective, the RMWP shall specify the

7   purchase of gauge-adjusted radar rainfall data at a spatial resolution of 1 kilometer

8   and a temporal resolution of 15 minutes.

9   • The RMWP shall include the number and location of existing and/or proposed

10   rainfall-measuring equipment sufficient for adjusting the radar rainfall data, and a

11   schedule that shall provide that all rainfall-measuring equipment shall be installed

12   and operational prior to the completion of installation of the flow monitors

13   specified in the FMWP.  The RMWP also shall include a recommended schedule

14   for calibration, maintenance and interrogation of rainfall-measuring equipment.

15   23.   The DAWP shall consist of a description of the methodology that EBMUD shall

16   employ to assess the data generated by the flow monitoring program.  This shall include, but not

17   necessarily limited to, a description of the modeling methodology EBMUD intends to employ,

18   an identification of the key assumptions employed in the modeling (e.g., regarding frequency and

19   intensity of wet weather events), and an analysis demonstrating how the data assessment and

20   modeling shall generate sufficiently complete and reliable information to support the FMLR.

21   This description shall also include a discussion of the anticipated constraints and limitations in

22   this data assessment and modeling effort including, but not necessarily limited to, a discussion of

23   under what circumstances (e.g., inadequate rainfall, non-cooperation by Satellites) the data

24   assessment and modeling effort could fail to generate, in a timely manner, sufficiently complete

25   and reliable information, and a contingency plan to address such constraints and limitations

26   should they arise.

27   24.   Once the Flow Monitoring/Data Assessment Program is approved pursuant to

28

STIPULATED ORDER            Page 13 of 42

1  Section VII, EBMUD shall implement the Flow Monitoring/Data Assessment Program according

2  to the approved schedules in the work plans.

3       25.     The Parties recognize that the Flow Monitoring/Data Assessment Program must

4  be sufficiently flexible to adapt to unforeseen circumstances (including, but not limited to

5  changes in technology).  If EBMUD believes it is appropriate to materially modify any portion of

6  the approved Flow Monitoring/Data Assessment Program, it may seek to do so pursuant to the

7  provisions of Section VII (Review and Approval of Deliverables).  For purposes of this

8  Paragraph, material modifications shall consist of changes to the FMWP, RMWP or DAWP that

9  result in a reduction in the number of flow monitoring locations; alteration to any key

10  assumptions in the DAWP; and any alteration to the key schedule milestones in the FMWP, the

11  RMWP or the DAWP.  Prior to submission of a material modification to the approved Flow

12  Monitoring/Data Assessment Program, EBMUD shall convene a workshop to discuss the

13  proposed modification.  EBMUD shall provide Plaintiffs and each Satellite with no less than 30

14  days advance notice of any such workshop, and make reasonable efforts to encourage each

15  Satellite to participate in any such workshop.  EBMUD shall allow no less than 30 days for the

16  submission of comments.  EBMUD shall provide all comments on the proposed modification,

17  along with any EBMUD responses, to Plaintiffs with its formal modification request.  Provided,

18  however, that if EBMUD determines that the work required by this Stipulated Order will be

19  impaired if a submission of modification request is delayed to allow for a workshop, EBMUD

20  may submit a modification request with a justification for delaying its workshop.  In such a

21  circumstance, EBMUD shall hold its workshop on its proposed modification as soon as

22  practicable after submitting its modification request and shall submit any comments on the

23  proposed modification to Plaintiffs as soon as practicable after the workshop.  EBMUD shall not

24  implement any such material modification until said modification is approved by Plaintiffs (or

25  any dispute is resolved pursuant to Section X (Dispute Resolution)).

26       26.     The Parties recognize that implementation of certain elements of the Flow

27  Monitoring/Data Assessment Program will require the cooperation of one or more of the

28

STIPULATED ORDER              Page 14 of 42

Satellites.  EBMUD shall use best efforts to secure the cooperation of the Satellites in implementing all aspects of the Flow Monitoring/Data Assessment Program.  If, at any point in the development or implementation of the Flow Monitoring/Data Assessment Program, EBMUD is refused necessary cooperation from a Satellite, EBMUD shall provide notice to the Plaintiffs.  Said notice shall identify the Satellite or Satellites that are refusing to cooperate and what aspects of the Flow Monitoring/Data Assessment Program cannot be timely accomplished unless the necessary cooperation is obtained.

        B.      FLOW MODELING AND LIMITS REPORT

        27.      No later than December 31, 2011, EBMUD shall submit the FMLR to EPA and the Regional Water Board for review and approval.  Prior to submitting the FMLR to EPA and the Regional Water Board, EBMUD shall conduct a workshop to which Plaintiffs and each of the Satellites shall be invited where EBMUD shall present the draft FMLR and solicit comments.  EBMUD shall allow no less than 30 days for the submission of comments.  All comments provided as a result of this workshop, as well as any EBMUD responses shall be submitted to EPA and the Regional Water Board along with the FMLR.

- The FMLR shall summarize the data developed in the Flow Monitoring/Data Assessment Program, and discuss the technical accuracy of the data and all correlations among the data collected under the FMWP and RMWP.  This shall include identifying any data gaps and discussing appropriate methods to address such gaps.

- The FMLR shall include a description of the modeling methodology utilized, summaries of computer modeling results showing how flows from the Satellites vary as a function of intensity, duration and location of rainfall, and discussion of any modifications that could be made to improve the computer modeling system as further data from the FMWP and RMWP are collected.

- The FMLR shall document wet weather flows and include alternative sets of proposed Capacity Flow Limits corresponding to different assumptions as to the

1   frequency and intensity of wet weather events, the shapes of future flow
2   hydrographs, and capacity variation in different reaches of EBMUD's interceptor
3   system.

4   • The FMLR shall include a description of the modeling methodology utilized and
5   an identification of the key assumptions employed in the modeling and calculation
6   of proposed Capacity Flow Limits (e.g., regarding frequency and intensity of wet
7   weather events).

8   28.    If, due to non-cooperation of one or more of the Satellites, EBMUD is unable to
9   obtain the data needed to timely complete the Flow Monitoring/Data Assessment Program or the
10   FMLR, EBMUD may seek to modify the schedule for completion of the affected deliverable.
11   Any such modification request shall be made no later than 30 days following when EBMUD was
12   aware (or should have been aware with the exercise of due diligence) of the impact of such non-
13   cooperation on the timely completion of the affected deliverable.  Any dispute regarding a
14   modification request pursuant to this Paragraph shall be resolved pursuant to Section X (Dispute
15   Resolution).

16   C.    REGIONAL PRIVATE SEWER LATERAL INSPECTION AND REPAIR OR
17   REPLACEMENT PROGRAM

18   29.    Within 240 days after the Effective Date, EBMUD shall adopt a Regional Private
19   Sewer Lateral Ordinance (the "Regional Ordinance") setting standards for the performance of
20   lateral sewer pipes that extend from privately-owned structures to the Satellites' collection
21   systems ("private sewer laterals").  These standards shall provide for the testing of private sewer
22   laterals; where needed, repair or replacement of defective laterals; and provide for elimination of
23   improper inflow connections as further described below.

24   30.    The Regional Ordinance shall, at a minimum, require the owner of a private sewer
25   lateral to obtain a "Compliance Certificate" (defined below) (a) prior to transferring title to such
26   structure, (b) prior to obtaining any permit or other approval needed for the construction or
27   significant modification of any such structure and (c) prior to obtaining approval from EBMUD
28

STIPULATED ORDER           Page 16 of 42

1    for an increase or decrease in size of the owner's water service, as defined by Section 17 of

2    EBMUD's Regulations Governing Water Service to Customers. "Compliance Certificate" shall

3    mean a document issued by EBMUD – or by a Satellite under standards contained in a Satellite

4    ordinance, provided that such standards are no less stringent (as determined by EPA following

5    consultation with the Regional Water Board pursuant to the following Paragraph) than EBMUD's

6    standards set forth in the Regional Ordinance – certifying that the private sewer lateral in

7    question is in compliance with the applicable standards. With respect to the duration of

8    Compliance Certificates, the Regional Ordinance shall provide:

9        • If the Compliance Certificate is obtained as a result of complete replacement of

10          the private sewer lateral, the Compliance Certificate shall be valid for 20 years

11          from the date of issuance. Complete replacement, for these purposes, may include

12          lining of the complete length of the private sewer lateral.

13       • If the Compliance Certificate is obtained without complete replacement – e.g., as a

14          result of repair work or testing without repair – the Compliance Certificate shall

15          be valid for 7 years from the date of issuance.

16       31.    Within 30 days after the Regional Ordinance's effective date, EBMUD shall make

17   written requests for cooperation to the Cities of Alameda, Albany, Berkeley, El Cerrito,

18   Emeryville, Oakland, Piedmont and Richmond and the Counties of Alameda and Contra Costa

19   (the public agencies in EBMUD's wastewater service area that are authorized to issue the permits

20   and other approvals referenced in the preceding Paragraph [the "Permitting Agencies"]) and

21   Stege Sanitary District. In these written requests, EBMUD shall (a) ask the Permitting Agencies

22   to include as part of the application process for such permits and approvals a requirement that the

23   applicant submit a valid Compliance Certificate, (b) give notice to the Permitting Agencies and

24   Stege Sanitary District of the opportunity to submit to EBMUD an application for a

25   determination that a private sewer lateral ordinance is "no less stringent" than the Regional

26   Ordinance ("No Less Stringent Application"). Within 30 days after EBMUD's receipt of any

27   "No Less Stringent Application," EBMUD shall submit to EPA and the Regional Water Board an

28

1    analysis of the application for EPA's and the Regional Water Board's consideration.  EPA,

2    following consultation with the Regional Water Board, shall determine whether to approve the

3    Application.

4        32.    Within 180 days after the Effective Date, EBMUD shall submit a draft Private

5    Lateral Incentive Program Work Plan ("PLIPWP") to EPA and the Regional Water Board for

6    review and comment.  Within 30 days after submitting the draft PLIPWP to EPA and the

7    Regional Water Board, EBMUD shall conduct a workshop to which Plaintiffs and each of the

8    Satellites shall be invited where EBMUD shall present the draft PLIPWP and solicit comments.

9    EBMUD shall allow no less than 30 days after the workshop for the submission of comments.

10   All comments provided as a result of this workshop, as well as any EBMUD responses shall be

11   submitted to EPA and the Regional Water Board along with the final PLIPWP (see below).  The

12   draft PLIPWP shall include, at a minimum, (I) a financial incentive program to accelerate (as

13   compared to what the Regional Ordinance would achieve without the PLIPWP) the testing of

14   private sewer laterals, repair or replacement of defective sewer laterals where needed, and

15   elimination of improper inflow connections ("lateral improvement work"); (II) performance

16   standards for lateral improvement work; (III) specification of tracking information to be kept by

17   EBMUD (including, without limitation, the total amount of EBMUD's incentive payments for

18   each year and the number of private sewer laterals tested, repaired and/or replaced) under both

19   EBMUD's implementation of the Regional Ordinance and the PLIPWP; (IV) specification of

20   tracking information to be requested by EBMUD from each Satellite relating to private sewer

21   lateral work within the Satellite's jurisdiction including, but not limited to, data regarding the

22   implementation of lateral improvement work and whether the Permitting Agencies identified in

23   Paragraph 31 have incorporated the Compliance Certificate requirements provided for in

24   Paragraph 31; (V) reporting requirements relating to both EBMUD's tracking information and

25   the Satellites' responses to EBMUD's requests for Satellite tracking information; and (VI)

26   schedules for the performance of all activities required under the PLIPWP.  Within 60 days after

27   the Regional Ordinance's adoption, EBMUD shall submit a final PLIPWP to EPA and the

28

1   Regional Water Board for approval as provided for in Section VII.

2       33.     The PLIPWP shall require EBMUD to spend an average of at least $2,000,000 per

3   year for such incentives during the term of this Stipulated Order (the "Required Spend"). The

4   PLIPWP shall provide that the costs incurred by EBMUD in administering the Private Lateral

5   Incentive Program ("PLIP Costs") – as distinguished from money paid to property owners,

6   contractors engaged by the owners and contractors engaged by EBMUD to test and, as needed,

7   repair or replace the owners' private sewer laterals ("PLIP Payments") – shall not be counted in

8   determining whether EBMUD has achieved the Required Spend. The PLIPWP shall be designed

9   with the goal of maximizing, to the extent reasonably practicable while still achieving the

10  Required Spend, reduction of I/I from private sewer laterals. The PLIPWP shall identify initial

11  high priority areas (those areas EBMUD will focus on first for lateral improvement work), and

12  provide the reasoning behind the designation of each initial high priority area. In identifying both

13  initial and later high priority areas, EBMUD shall consider, without limitation, the following

14  criteria (A) age of sewer and private sewer lateral piping, taking into account the latest repair

15  work performed on the piping, (B) areas where work was performed on the sewer main but high

16  I/I still exists, (C) areas where work is already being done (e.g., on the sewer main) so economies

17  of scale can be achieved to minimize cost of private sewer lateral work and (D) areas known to

18  have ongoing high I/I issues.

19      34.     The Parties recognize and agree that (i) the goal of maximizing reduction of I/I

20  from private sewer laterals includes the concept of minimizing "redundancy" (defined as the

21  extent to which incentive dollars are used to pay for work that would have been required by the

22  Regional Ordinance in the absence of the PLIPWP) and (ii) redundancy cannot be completely

23  avoided.

24      35.     EBMUD's compliance with the Required Spend requirement of Paragraph 33

25  shall be determined annually as of the anniversary of the Required Spend Start Date. The

26  Required Spend Start Date shall be the later of (i) the date the PLIPWP is approved pursuant to

27  Section VII, and (ii) the date any Dispute Resolution (Section X) procedures with respect to the

28

approval of the PLIPWP have been completed. As of each anniversary of the Required Spend Start Date, EBMUD shall document that it has achieved the Required Spend of $2,000,000 per year. EBMUD shall achieve the Required Spend through incentive payments consistent with the requirements of the PLIPWP. To the extent that incentive payments are less than the Required Spend in any year, EBMUD shall deposit the residue - up to the Annual Deposit Limit as set out below - into a segregated Deposit Account (held by an FDIC-insured institution) to be used solely for PLIP Payments, and such deposits shall count toward the Required Spend. The Annual Deposit Limit shall decline over time as follows:

- On the first anniversary of the Required Spend Start Date, the Annual Deposit Limit shall be $2,000,000.
- On the second anniversary of the Required Spend Start Date, the Annual Deposit Limit shall be $1,500,000.
- On the third anniversary of the Required Spend Start Date, the Annual Deposit Limit shall be $1,000,000.
- On the subsequent anniversaries of the Required Spend Start Date, the Annual Deposit Limit shall be $500,000.

As of each anniversary of the Required Spend Start Date – starting on the fourth anniversary, EBMUD shall further document that the total sum retained in the Deposit Account (excluding any accrued interest) does not exceed the sum of the Annual Deposit Limits for the previous three years. Any such excess sums retained in the Deposit Account shall constitute Surplus Deposits.

36.     Once the final PLIPWP is approved pursuant to Section VII and any Dispute Resolution (Section X) procedures have been completed, EBMUD shall implement the PLIPWP according to the approved schedules contained therein. Within 30 days after the approval of the PLIPWP, EBMUD shall make written requests to the Permitting Agencies (defined in Paragraph 31) and Stege Sanitary District to provide annual reports including the tracking information prescribed in the PLIPWP pursuant to Paragraph 32 (IV).

37.     EBMUD shall keep records specifying for each Compliance Certificate (a) the

1   date, (b) the location of the subject private sewer lateral and (c) the amount of EBMUD's

2   incentive payment, if any.  During the term of this Stipulated Order, EBMUD, in its annual

3   reports to Plaintiffs, shall (i) provide all the information required under the PLIPWP, and (ii)

4   specify whether EBMUD recommends any changes to the PLIPWP (other than changes to the

5   Required Spend amount).  If, at any time, EBMUD recommends changes to the PLIPWP,

6   EBMUD shall continue to operate under the approved PLIPWP until such time, if any, as the

7   recommended changes are approved pursuant to Section VII and any Dispute Resolution (Section

8   X) procedures have been completed, at which time EBMUD shall implement the changed

9   PLIPWP according to the approved schedules contained therein.

10          D.      ASSET MANAGEMENT AND INTERIM OPERATION

11          38.     Within 210 days after the Effective Date, EBMUD shall submit an Interceptor

12  System Asset Management Work Plan ("ISAMWP") to EPA and the Regional Water Board for

13  approval pursuant to Section VII.  The ISAMWP shall include, at a minimum, (a) schedules and

14  reporting requirements for the inspection of EBMUD's entire interceptor system within five

15  years, (b) interceptor system maintenance protocols, including recommendations for cleaning and

16  (c) schedules for the types of interceptor system repairs and replacement that EBMUD shall

17  undertake as needed based on the inspection results.  Prior to submission of the ISAMWP to EPA

18  and the Regional Water Board, EBMUD shall conduct a workshop to which Plaintiffs and each

19  of the Satellites shall be invited where EBMUD shall present a draft ISAMWP and solicit

20  comments.  EBMUD shall allow no less than 30 days after the workshop for the submission of

21  comments.  All comments provided as a result of this workshop, as well as any EBMUD

22  responses shall be submitted to EPA and the Regional Water Board along with the final

23  ISAMWP.  Once the ISAMWP is approved pursuant to Section VII and any Dispute Resolution

24  (Section X) procedures have been completed, EBMUD shall implement the ISAMWP according

25  to the approved schedules contained therein.

26          39.     Within 120 days after the Effective Date, EBMUD shall make written requests

27  asking the Satellites to meet to discuss and provide input into EBMUD's preparation of a

28

1  Collection System Asset Management Template.  The requests shall include a schedule of not

2  less than six meetings to which all Satellites and EPA and the Regional Water Board are invited

3  over the ensuing 18 months.  At the last meeting, EBMUD shall provide the Satellites and EPA

4  and the Regional Water Board with a written final draft of the Template and afford the Satellites

5  90 days to provide written comments.  Within four months after the end of the comment period

6  on the final draft, EBMUD shall submit the Template – together with all written comments

7  received from the Satellites and any responses by EBMUD – to EPA and the Regional Water

8  Board.  The Template shall include an industry-standard asset management program and

9  associated information system suitable for the Satellites' collection systems.  The Template shall

10  include, at a minimum, a program (including schedules and reporting requirements) calling for

11  (a) routine inspection (including a process for detection of improper inflow connections) of the

12  entire collection system according to a specified schedule with a protocol for determining the

13  regular time interval on which repeat inspections would be performed, (b) collection system

14  maintenance protocols including recommendations for cleaning and (c) repairs and replacement

15  to occur as needed (including elimination of improper inflow connections) according to a

16  schedule informed by the inspection results.

17      40.      Within 180 days after the Effective Date, EBMUD shall hold a workshop to which

18  Plaintiffs and the Satellites shall be invited.  At the workshop, EBMUD shall make a presentation

19  on the WWF's operating procedures and solicit comments.  EBMUD shall allow no less than 30

20  days following the workshop for the submission of comments.  All written comments provided as

21  a result of this workshop, as well as any EBMUD responses shall be submitted to EPA and the

22  Regional Water Board within 60 days after the workshop.

23      E.      CONDITIONAL ASSUMPTION OF RESPONSIBILITY FOR COLLECTION

24  SYSTEMS

25      41.      It may be in the mutual interest of EBMUD and one or more of the Satellites to

26  have EBMUD take over ownership and operation of all assets included in or necessary to the

27  operation of a Satellite's collection system.  Any such undertaking will require an agreement

28

1    between EBMUD and the affected Satellite(s) regarding the disposition of the affected assets and

2    associated revenues and liabilities.

3        42.    No later than 30 days after the Effective Date, EBMUD shall provide notice to the

4    governing bodies of each of the Satellites of its willingness to enter into negotiations concerning

5    undertaking the operation of each Satellite's collection system.  Such notice shall identify the

6    issues that must be addressed in any such negotiations including, without limitation, issues

7    regarding the transfer of assets and contract rights and the allocation of rights and liabilities.

8                            VI.    ANNUAL REPORTING REQUIREMENTS

9        43.    Timing.  By August 31 of each year between the Effective Date and the

10    Termination Date, EBMUD shall submit to Plaintiffs an annual progress report.

11        44.    Contents.  Each annual progress report shall include a summary discussion of each

12    of the following for the period from July 1 of the previous year through June 30 of the current

13    year:  (a) work performed by EBMUD, (b) costs incurred by EBMUD for the work [these costs

14    shall be segregated to track each subsection of the Work (Section V)], (c) Deliverables submitted

15    to Plaintiffs, (d) Plaintiffs' actions regarding the Deliverables, (e) any Dispute Resolution

16    proceedings, (f) measured and modeled flows as compared to Capacity Flow Limits (once

17    approved by EPA) and any trends observed, (g) private sewer lateral compliance records, as

18    described in Paragraph 32 (including tracking information acquired from the Permitting

19    Agencies and Stege Sanitary District pursuant to Paragraphs 32 (IV) and 36), (h) discharge

20    events from the Wet Weather Facilities, and (i) any recommended or required changes to the

21    work required by Section V, including any proposed material modifications, for the following

22    year.  If the Annual Report documents that any of the obligations subject to stipulated penalties

23    may not have been fully complied with, and EBMUD takes the position that potentially

24    applicable stipulated penalties should not be assessed, or pursuant to Paragraph 57, should be

25    reduced or waived, EBMUD may include in the Annual Report an explanation as to why EPA

26    and the Regional Water Board should forego collecting such penalties.  In calculating costs

27    incurred by EBMUD in connection with the work, EBMUD shall include all in-house costs and

28

1  outside contractor costs.

2    45.    Each annual report shall be submitted to the persons designated in the Notices

3  Section of this Stipulated Order.

4    46.    Each annual report shall be signed by an EBMUD official and include the

5  following certification:

6    I certify under penalty of law that this document and its attachments were prepared either
     by me personally or under my direction or supervision in a manner designed to ensure
7    that qualified and knowledgeable personnel properly gathered and presented the
     information contained therein. I further certify, based on my personal knowledge or on
8    my inquiry of those individuals immediately responsible for obtaining the information,
     that to the best of my knowledge and belief the information is true, accurate and
9    complete. I am aware that there are significant penalties for submitting false information,
     including the possibility of fines and imprisonment for knowing and willful submission of
10   a materially false statement.

11   47.    Concurrently with the annual report, EBMUD shall submit an ISAMWP update to

12  EPA and the Regional Board for approval. The ISAMWP update shall include the results of

13  inspections performed as part of the ISAMWP, identification any uncompleted repair or

14  replacement work required by the ISAMWP and schedules for completing such work.

15   48.    The reporting requirements of this Stipulated Order do not relieve EBMUD of any

16  reporting obligations required by the CWA or the California Water Code or their implementing

17  regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

18   49.    No less than 60 days after submission of each annual report, EBMUD shall

19  convene a workshop to discuss the work performed in the past year and plans for the work to be

20  performed in the coming year. EBMUD shall provide Plaintiffs and each Satellite with no less

21  than 30 days advance notice of each workshop, and make reasonable efforts to encourage each

22  Satellite to participate in each workshop. EBMUD shall allow no less than 30 days for the

23  submission of comments. EBMUD shall provide all comments on the annual report, along with

24  any EBMUD responses, to Plaintiffs within 60 days after the workshop.

25              VII.    REVIEW AND APPROVAL OF DELIVERABLES

26   50.    Within 90 days of submission to EPA and the Regional Water Board of any

27  Deliverable, EPA, following consultation with the Regional Water Board, shall, in writing: (a)

28

---

STIPULATED ORDER                    Page 24 of 42

approve the Deliverable, (b) approve the Deliverable with conditions, (c) approve part of the Deliverable and disapprove the remainder, or (d) disapprove the Deliverable. If EPA does not do one of these four things within the 90-day period, EBMUD shall have the right to invoke the procedures set forth in Section X (Dispute Resolution). EPA and the Regional Water Board shall use their best efforts to timely respond to any Deliverable as provided for by this Paragraph and promptly communicate with EBMUD at such time as they become aware of any constraint on timely response to a Deliverable.

51.     If the submission is approved pursuant to this Section, EBMUD shall take all actions required by the Deliverable, in accordance with the schedules and requirements of the Deliverable as approved. If the submission is conditionally approved or approved only in part, EBMUD shall, upon written direction of EPA, following consultation with the Regional Water Board, take all actions required by the approved Deliverable that EPA determines are technically severable from any disapproved portions, subject to EBMUD's right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

52.     If the Deliverable is disapproved in whole or in part pursuant to this Section, EBMUD shall, within 60 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Deliverable, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. Alternatively, EBMUD may invoke the Dispute Resolution Section of this Stipulated Order.

53.     If a resubmitted Deliverable, or portion thereof, is disapproved in whole or in part, EPA, following consultation with the Regional Water Board, may again require EBMUD to correct any deficiencies, in accordance with the preceding Paragraphs, subject to EBMUD's right to invoke Dispute Resolution.

VIII.   STIPULATED PENALTIES

54.     EBMUD shall be liable for Stipulated Penalties to Plaintiffs for the following violations of this Stipulated Order as specified below:

55.     Delays in Submission of Deliverables. EBMUD shall be subject to the following

stipulated penalties for each failure to timely submit to Plaintiffs, whether in draft or final form, a Deliverable or Annual Report subject to a deadline under this Stipulated Order:

| Period of Noncompliance | Penalty Per Day for Failure to Timely Submit |
| --- | --- |
| Days 1-30 | $250 |
| Days 31-60 | $500 |
| Days over 61 | $2,000 |

56.    Failure to Complete Specified Work.

a. EBMUD shall be subject to the following stipulated penalties for failure to timely adopt a Regional Ordinance consistent with the minimum requirements of Paragraphs 29-30:

| Period of Noncompliance | Penalty Per Day for Failure to Timely Submit |
| --- | --- |
| Days 1-30 | $1,000 |
| Days 31-60 | $1,500 |
| Days over 61 | $2,000 |

b. If, in any year, the Required Spend provided for pursuant to Paragraphs 33 and 35 does not reach $2,000,000, EBMUD shall be subject to a stipulated penalty of up to the amount of the shortfall.

c. If, in any year, Surplus Deposits are retained in the Deposit Credit Account, such Surplus Deposits shall be subject to forfeiture as a stipulated penalty.

57.    Each Plaintiff may, in the un-reviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Stipulated Order.

58.    Upon demand, fifty percent (50%) of each payment of stipulated penalties made pursuant to this Section shall be made to the United States, and fifty percent (50%) of each payment shall be made to the Regional Water Board, using the penalty payment procedures set forth in the following Paragraph.  Plaintiffs may modify these payment procedures through written notice to EBMUD.

59.    EBMUD shall pay Stipulated Penalties owing to the United States by certified or

1    cashier's check in the amount due payable to the "U.S. Department of Justice," referencing DOJ

2    No. 90-5-1-1-09361 and the civil action number of this matter and delivered to the office of the

3    United States Attorney, Northern District of California, Financial Litigation Unit, 450 Golden

4    Gate Avenue, 11th Floor, San Francisco, CA 94102, unless the United States directs EBMUD to

5    pay by EFT in accordance with Section VIII of this Stipulated Order. EBMUD shall pay

6    Stipulated Penalties owing to the Regional Water Board by sending a certified or cashier's check

7    payable to "State Water Pollution Cleanup and Abatement Account" to: Executive Officer,

8    California Regional Water Quality Control Board, San Francisco Bay Region, 1515 Clay Street,

9    Suite 1400, Oakland, CA 94612.

10        60.     If EBMUD fails to pay Stipulated Penalties according to the terms of this

11    Stipulated Order, EBMUD shall be liable for interest on such penalties, as provided for in 28

12    U.S.C. § 1961, accruing as of the date payment became due, subject to the following Paragraph.

13        61.     Upon receipt of Plaintiffs' written demand for payment of a stipulated penalty,

14    EBMUD may dispute its liability for such stipulated penalty pursuant to the Dispute Resolution

15    Section of this Stipulated Order. Pending resolution of any such dispute, stipulated penalties

16    continue to accrue if the obligation at issue has not been met and interest on any unpaid penalties

17    accrues pursuant to the terms of the preceding Paragraph. Upon the completion of dispute

18    resolution, any stipulated penalties that are ultimately determined to be due, plus interest as

19    applicable, shall be paid within 20 days of the date of Plaintiffs' written decision or, if applicable,

20    any Court order.

21        62.     The payment of stipulated penalties shall not alter in any way EBMUD's

22    obligation to complete the performance of all activities required under this Stipulated Order.

23    Payment of stipulated penalties pursuant to this Section shall be in addition to any other rights or

24    remedies that shall be available to Plaintiffs by reason of EBMUD's failure to comply with the

25    requirements of this Stipulated Order, or any other applicable federal, state or local laws,

26    regulations, NPDES permits, and all other applicable permits.

27

28

1

IX.   FORCE MAJEURE

2      63.    A "force majeure event" is any event beyond the control of EBMUD, its

3   contractors, or any entity controlled by EBMUD that delays the performance of any obligation

4   under this Stipulated Order despite EBMUD's best efforts to fulfill the obligation.  "Best efforts"

5   includes anticipating reasonably foreseeable force majeure events and taking appropriate

6   preventive actions before a force majeure event occurs. "Best efforts" also includes addressing

7   the effects of any force majeure event (a) as it is occurring and (b) after it has occurred, to

8   prevent or minimize any resulting delay to the extent reasonably practicable.  "Force Majeure"

9   does not include EBMUD's financial inability to perform any obligation under this Stipulated

10  Order.

11     64.    EBMUD shall provide written notice, as provided in Section XIV of this

12  Stipulated Order (Notices), within 30 days of the time EBMUD first knew of, or by the exercise

13  of due diligence, should have known of, a claimed force majeure event. The notice shall state the

14  anticipated duration of any delay, its cause(s), EBMUD's past and proposed actions to prevent or

15  minimize any delay, a schedule for carrying out those actions, and EBMUD's rationale for

16  attributing any delay to a force majeure event.  Failure to provide written notice as required by

17  this Paragraph shall preclude EBMUD from asserting any claim of force majeure.

18     65.    If EPA, following consultation with the Regional Water Board, agrees that a force

19  majeure event has occurred, it may agree to extend the time for EBMUD to perform the affected

20  requirements for the time necessary to complete those obligations.  An extension of time to

21  perform the obligations affected by a force majeure event shall not, by itself, extend the time to

22  perform any other obligation. Where EPA, following consultation with the Regional Water

23  Board, agrees to an extension of time, the appropriate modification shall be made pursuant to

24  Section XVI of this Stipulated Order (Modification).

25     66.    If EPA, following consultation with the Regional Water Board, does not agree that

26  a force majeure event has occurred, or does not agree to the extension of time sought by

27  EBMUD, EPA's position shall be binding, unless EBMUD invokes Dispute Resolution under

28

STIPULATED ORDER              Page 28 of 42

1  Section X of this Stipulated Order. In any such dispute, EBMUD bears the burden of proving, by

2  a preponderance of the evidence, that each claimed force majeure event is a force majeure event,

3  that EBMUD gave the notice required hereunder, that the force majeure event caused any delay

4  EBMUD claims was attributable to that event, and that EBMUD exercised best efforts to prevent

5  or minimize any delay caused by the event.

6                                    X.    DISPUTE RESOLUTION

7       67.    Unless otherwise expressly provided for in this Stipulated Order, all disputes

8  under this Stipulated Order are subject to dispute resolution, and the dispute resolution

9  procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or

10 with respect to this Stipulated Order. However, such procedures shall not apply to actions by the

11 United States and the Regional Water Board to enforce obligations of EBMUD that have not

12 been disputed in accordance with this Section.

13      68.    Informal Dispute Resolution. Any dispute subject to dispute resolution under this

14 Stipulated Order shall first be the subject of informal negotiations. The dispute shall be

15 considered to have arisen when EBMUD sends Plaintiffs a written Notice of Dispute. Such

16 Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations

17 shall not exceed 20 days from the date the dispute arises, unless that period is modified by written

18 agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position

19 advanced by Plaintiffs shall be considered binding unless, within 30 days after the conclusion of

20 the informal negotiation period, EBMUD invokes the dispute resolution procedures as set forth in

21 the following three Paragraphs (the "DR Paragraphs").

22      69.    Dispute Resolution. EBMUD shall invoke the dispute resolution procedures of

23 the DR Paragraphs within the time period provided in the preceding Paragraph by serving on

24 Plaintiffs a written Statement of Position regarding the matter in dispute. The Statement of

25 Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion

26 supporting the position and any supporting documentation relied upon by EBMUD. EPA,

27 following consultation with the Regional Water Board, shall serve the Plaintiffs' Statement of

28

1   Position within 45 days after service of EBMUD's Statement of Position. Plaintiffs' Statement
2   of Position shall include, but may not necessarily be limited to, any factual data, analysis, or
3   opinion supporting that position and all supporting documentation relied upon by the United
4   States and the Regional Water Board. Plaintiffs' Statement of Position shall be binding unless
5   EBMUD files a motion for judicial review of the dispute in accordance with the following
6   Paragraphs.

7       70.     Judicial Dispute Resolution. EBMUD may seek judicial review of the dispute
8   against Plaintiffs by filing with the Court and serving on Plaintiffs in accordance with Section
9   XIV of this Stipulated Order (Notices), a motion requesting judicial resolution of the dispute.
10  The motion must be filed within 60 days after service of Plaintiffs' Statement of Position
11  pursuant to the preceding Paragraph. The motion shall contain a written statement of EBMUD's
12  position on the matter in dispute, including any supporting factual data, analysis, opinion, or
13  documentation, and shall set forth the relief requested and any schedule within which the dispute
14  must be resolved for orderly implementation of this Stipulated Order. Plaintiffs shall have at
15  least 60 days in which to respond to EBMUD's motion. EBMUD may file a reply memorandum
16  to the extent permitted by the Local Rules. In any dispute in District Court under this Section X,
17  EBMUD shall bear the burden of demonstrating by a preponderance of the evidence that
18  EBMUD's position on the issues in dispute best complies with this Stipulated Order.

19      71.     Effect on Stipulated Order Obligations. The invocation of dispute resolution
20  procedures under this Section shall not, by itself, extend, postpone, or affect in any way any
21  obligation of EBMUD under this Stipulated Order, unless and until the final resolution of the
22  dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to
23  accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the
24  dispute as provided in Section VIII. If EBMUD does not prevail on the disputed issue, Stipulated
25  Penalties shall be assessed and paid as provided in Section VIII.

26                    XI.    INFORMATION COLLECTION AND RETENTION

27      72.     Plaintiffs and their representatives, including attorneys, contractors, and

28

---

STIPULATED ORDER            Page 30 of 42

1 | consultants, shall have the right of entry on EBMUD property at all reasonable times, upon
2 | presentation of credentials, to:

3 |        a.     monitor the progress of activities required under this Stipulated Order;

4 |        b.     verify any data or information submitted to Plaintiffs in accordance with
5 | the terms of this Stipulated Order;

6 |        c.     obtain documentary evidence, including photographs and similar data; and

7 |        d.     assess EBMUD's compliance with this Stipulated Order.

8 |     73.     Until the termination of this Stipulated Order and any subsequent order or decree
9 | entered in this matter, EBMUD shall retain, and shall instruct its contractors and agents to
10 | preserve, all final versions of records and documents (including records or documents in
11 | electronic form) in its or its contractors' or agents' possession or control, or that come into its or
12 | its contractors' or agents' possession or control, that document EBMUD's performance of its
13 | obligations under this Stipulated Order. This record retention requirement shall apply regardless
14 | of any EBMUD, corporate, or institutional document-retention policy to the contrary. At any
15 | time during this record-retention period, Plaintiffs may request copies of any documents or
16 | records required to be maintained under this Paragraph.

17 |     74.     This Stipulated Order in no way limits or affects any right of entry and inspection,
18 | or any right to obtain information, held by Plaintiffs pursuant to applicable federal or state laws,
19 | regulations, or permits, nor does it limit or affect any duty or obligation of EBMUD to maintain
20 | records or information imposed by applicable federal or state laws, regulations, or permits.

21 |           XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

22 |     75.     This Stipulated Order is a partial remedy for the civil claims of the United States
23 | and the State of California (including the Regional and State Water Boards) for the violations
24 | alleged in the Complaint filed in this action. Therefore, this Stipulated Order does not resolve
25 | these civil claims and is without prejudice to the United States' and the State of California's
26 | (including the Regional and State Water Boards) right to seek further relief to address these
27 | claims or any future claims, including, but not limited to, further injunctive relief, and civil

28 |

1  penalties, and the right of the United States and the State of California (including the Regional
2  and State Water Boards) to seek further administrative relief to address these claims.  It is the
3  present intention of the Parties to seek to negotiate a subsequent agreement to resolve the civil
4  claims of the United States and the State of California (including the Regional and State Water
5  Boards) for the violations alleged in the Complaint.  However, the Parties recognize that such
6  negotiations may not result in such a resolution and that the United States and the State of
7  California (including the Regional and State Water Boards) reserve the right to take such actions
8  as they deem appropriate and necessary to resolve these claims and any future claims.  In this and
9  any subsequent administrative or judicial proceeding initiated by the United States and/or the
10 State of California (including the Regional and State Water Boards) for injunctive relief, civil
11 penalties, or other appropriate relief relating to Defendant's compliance with the Clean Water Act
12 and/or the California Water Code, Defendant shall not assert, and may not maintain, any defense
13 or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion,
14 claim preclusion, claim-splitting, or other defenses based upon any contention that the claims
15 raised by the United States and/or the State of California (including the Regional and State Water
16 Boards) in the subsequent proceeding were or should have been brought in the instant case. In
17 this and any subsequent administrative or judicial proceeding initiated by the United States
18 and/or the State of California (including the Regional and State Water Boards) for injunctive
19 relief, civil penalties, or other appropriate relief relating to Defendant's compliance with the
20 Clean Water Act and/or the California Water Code, Plaintiffs shall not assert, and may not
21 maintain, that Defendant is barred or in any way hindered from asserting any defense or claim
22 based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim
23 preclusion, claim-splitting, or other principles based upon any contention that the defense or
24 claim raised by Defendant in the subsequent proceeding were or should have been brought in the
25 instant case.
26     76.     This Stipulated Order also does not resolve the claims of the State of California
27 (including the Regional and State Water Boards) for litigation costs (including attorneys fees)
28

1   pursuant to Cal. Code Civ. Proc. § 1021.8.

2   77.   The United States and the State of California (including the Regional and State

3   Water Boards) reserve all legal and equitable remedies available to enforce the provisions of this

4   Stipulated Order.  This Stipulated Order shall not be construed to prevent or limit the rights of the

5   United States or the State of California (including the Regional and State Water Boards) to obtain

6   penalties or injunctive relief under the Act or implementing regulations, or under other federal or

7   state laws, regulations, or permit conditions.

8   78.   This Stipulated Order is not a permit, or a modification of any permit, under any

9   federal, state, or local laws or regulations.  EBMUD is responsible for achieving and maintaining

10  complete compliance with all applicable federal, state, and local laws, regulations, and permits.

11  The United States and the State of California (including the Regional and State Water Boards) do

12  not, by their consent to the entry of this Stipulated Order, warrant or aver in any manner that

13  EBMUD's compliance with any aspect of this Stipulated Order will result in compliance with

14  provisions of the CWA or the California Water Code.

15  79.   Nothing in this Stipulated Order shall constitute an admission of any fact or of any

16  liability or a waiver of any right unless explicitly set forth herein.  From the commencement of

17  this action through the termination of this Stipulated Order, Plaintiffs shall be deemed to be

18  "diligently prosecuting" this action as that term is used in CWA § 505(b)(1)(B), 33 U.S.C.

19  §1365(b)(1)(B).

20  80.   This Stipulated Order does not limit or affect the rights of EBMUD or of the

21  Plaintiffs against any third parties not party to this Stipulated Order, nor does it limit the rights of

22  third parties not party to this Stipulated Order against EBMUD, except as otherwise provided by

23  law.

24  81.   This Stipulated Order shall not be construed to create rights in, or grant any cause

25  of action to, any third party not party to this Stipulated Order.

26  82.   Nothing in this Stipulated Order shall limit EBMUD's ability to modify its

27  program for the design, planning, construction, operation, and maintenance of its facilities in any

28

fashion not inconsistent with this Stipulated Order.

83.     Following entry of this Stipulated Order, EBMUD shall dismiss its civil action (Alameda Superior Court Case No. RG07-329-738) contesting State Water Resources Control Board Order WQ 2007-0004.

XIII.   COSTS

84.     The Parties shall bear their own costs of this action, including attorneys fees, except Plaintiffs shall be entitled to collect the costs (including attorneys fees) incurred in any action necessary to collect any Stipulated Penalties due but not paid by EBMUD (for the purposes of this Paragraph, Stipulated Penalties are not "due" until after the conclusion of dispute resolution proceedings regarding the Stipulated Penalties pursuant to the Dispute Resolution Section of this Stipulated Order, if any).

XIV.   NOTICES

85.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Stipulated Order they shall be made in writing and addressed as follows:

    a.     To EPA:

Chief, Clean Water Act Compliance Office (WTR-7), Water Division
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

    b.     To the Regional Water Board:

Executive Officer
San Francisco Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612

    and

John Davidson
Supervising Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102

    c.     To the United States:

Chief, Clean Water Act Compliance Office(WTR-7), Water Division
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

        and

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-1-1-09361

      d.     To the State Water Board:

Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

      e.     To Plaintiffs:

To the United States and the State and Regional Water Boards as indicated in "b," "c" and "d" above.

      f.     To EBMUD:

Director of Wastewater
East Bay Municipal Utility District
375 Eleventh Street
P.O. Box 24055
Oakland, CA  94607-4240

        and

General Counsel
East Bay Municipal Utility District
375 Eleventh Street
P.O. Box 24055
Oakland, CA  94607-4240

        and

Brian S. Haughton, Esq.
Barg Coffin Lewis & Trapp, LLP
350 California Street, 22nd Floor
San Francisco, California  94104-1435

    86.    Any Party may, by written notice to the other Parties, change its designated notice recipient(s) or notice address(es) provided above.

---

STIPULATED ORDER            Page 35 of 42

87.     Notices submitted pursuant to this Section shall be deemed submitted upon
mailing, unless otherwise provided in this Stipulated Order or by mutual agreement of the Parties
in writing.

## XV.   RETENTION OF JURISDICTION

88.     The Court shall retain jurisdiction over this case for the purpose of resolving
disputes arising under this Stipulated Order pursuant to the Dispute Resolution Section of this
Stipulated Order, entering orders modifying this Stipulated Order pursuant to the Modification
Section of this Stipulated Order, or effectuating or enforcing compliance with the terms of this
Stipulated Order.

## XVI.   MODIFICATION

89.     The terms of this Stipulated Order may be modified only by a subsequent written
agreement signed by all the Parties.  Where the modification constitutes a material change to any
term of this Stipulated Order, it shall be effective only upon approval by the Court.

## XVII.  TERMINATION

90.     EPA, following consultation with the Regional Board, may seek to terminate this
Stipulated Order at any time after January 1, 2012 should EPA determine that the Stipulated
Order cannot be effectively implemented to accomplish its objectives. If EBMUD objects to
termination of this Stipulated Order pursuant to this Paragraph, it may invoke Section X. (Dispute
Resolution).

91.     EBMUD shall not seek to terminate this Stipulated Order prior to approval of the
FMLR (either directly by Plaintiffs or indirectly as a result of a Dispute Resolution process
pursuant to Section X.).

92.     Following the approval of the FMLR, the Parties may jointly move to terminate
the Stipulated Order with the approval of the Court.  EBMUD shall provide a report on the status
of its compliance with the Stipulated Order to accompany any such motion to terminate.

93.     If, following the approval of the FMLR, the Parties cannot agree as to whether the
Stipulated Order should be terminated, any party may move the Court for relief from Stipulated

1  Order.  EBMUD shall not seek relief from the Stipulated Order unless it certifies to Plaintiffs

2  and the Court that there are no outstanding Stipulated Penalty assessments pending pursuant to

3  this Stipulated Order.

4       94.     Before the Court terminates the Stipulated Order, the party or parties moving for

5  termination shall submit a proposed order for approval of the Court providing for the expenditure

6  of all remaining funds in the Deposit Account in a timely manner consistent with the provisions

7  of the PLIPWP.

8                          XVIII. PUBLIC PARTICIPATION

9       95.     This Stipulated Order shall be lodged with the Court for a period of not less than

10  30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  Plaintiffs reserve

11  the right to withdraw or withhold their consent if comments regarding this Stipulated Order

12  disclose facts or considerations indicating that this Stipulated Order is inappropriate, improper, or

13  inadequate.  EBMUD consents to entry of this Stipulated Order without further notice.

14                          XIX.    SIGNATORIES/SERVICE

15      96.     Each undersigned representative of the Defendant, the Regional Water Board, the

16  State Water Board, and the Assistant Attorney General for the Environment and Natural

17  Resources Division of the Department of Justice certifies that he or she is fully authorized to

18  enter into the terms and conditions of this Stipulated Order and to execute and legally bind the

19  Party he or she represents to this document.

20      97.     This Stipulated Order may be signed in counterparts, and its validity shall not be

21  challenged on that basis.

22                          XX.    INTEGRATION

23      98.     This Stipulated Order constitutes the final, complete, and exclusive agreement and

24  understanding among the Parties with respect to the settlement embodied in this Stipulated Order,

25  and this Stipulated Order supersedes all prior agreements and understandings, whether oral or

26  written, concerning the settlement embodied herein.  Other than Deliverables that are

27  subsequently submitted pursuant to this Stipulated Order, no other document and no other

28

representation, inducement, agreement, understanding, or promise constitutes any part of this Stipulated Order or the settlement it represents, nor shall they be used in construing the terms of this Stipulated Order.

## XXI.  HEADINGS

99.    Headings to the sections and subsections of this Stipulated Order are provided for convenience and do not affect the meaning or interpretation of the provisions of this Stipulated Order.

## XXII.  PARTIAL JUDGMENT

100.    Upon approval and entry of this Stipulated Order by the Court, this Stipulated Order shall constitute a partial judgment of the Court as to the Parties.  The Parties recognize that final resolution of the claims set forth in the Complaint will require further remedial action, and this Stipulated Order is without prejudice to the Parties' positions as to the merits of any such further relief.

Dated and entered this 4th day of February , 2009.

UNITED STATES DISTRICT JUDGE
Northern District of California

1  WE HEREBY CONSENT to the entry of this Stipulated Order, subject to the

2  public notice and comment provisions of 28 C.F.R. § 50.7:

3  For Plaintiff the United States of America:

4

5

6  Dated: **8 January 2009**                    _____
                                                RONALD J. TENPAS
7                                               Assistant Attorney General
                                                Environment & Natural Resources Division
8                                               U.S. Department of Justice

9

10

11

12                                              _____
                                                LORI JONAS
13                                              Environmenal Enforcement Section
                                                U.S. Department of Justice
14                                              P.O. Box 7611
                                                Ben Franklin Station
15                                              Washington, D.C. 20044-7611

16
                                                Attorneys for Plaintiff, United States of America
17

18

19

20

21

22

23

24

25

26

27

28

_____

STIPULATED ORDER                   Page 39 of 42

1   WE HEREBY CONSENT to the entry of this Stipulated Order, subject to the public notice and

2   comment provisions of 28 C.F.R. § 50.7:

3   For Plaintiff the United States of America (cont'd):

4

5

6   Dated: 1/8/09

                  MARK POLLINS, Director
7                     Water Enforcement Division
                  Office of Enforcement and Compliance Assurance
8                     U.S. Environmental Protection Agency

9

10

11                    WAYNE NASTRI
                  Regional Administrator
12                    U.S. Environmental Protection Agency, Region 9

13

14

15  Of Counsel:
    HUGH BARROLL
16  Assistant Regional Counsel
    U.S. Environmental Protection Agency, Region 9
17

18

19

20

21

22

23

24

25

26

27

28

1   WE HEREBY CONSENT to the entry of this Stipulated Order, subject to the public notice and

2   comment provisions of 28 C.F.R. § 50.7:

3   For Plaintiff the United States of America (cont'd):

4

5

6   Dated:_____          _____
                                    MARK POLLINS, Director
7                                   Water Enforcement Division
                                    Office of Enforcement and Compliance Assurance
8                                   U.S. Environmental Protection Agency

9

10                                  _____
                                    WAYNE NASTRI
11                                  Regional Administrator
                                    U.S. Environmental Protection Agency, Region 9
12

13

14

15  Of Counsel:
    HUGH BARROLL
16  Assistant Regional Counsel
    U.S. Environmental Protection Agency, Region 9
17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED ORDER          Page 40 of 42

1    WE HEREBY CONSENT to the entry of this Stipulated Order:

2    For Plaintiff People of the State of California ex rel. California State Water Resources Control
     Board and California Regional Water Quality Control Board, San Francisco Bay Region:
3
                                              EDMUND G. BROWN JR.
4                                             Attorney General of the State of California

5

6
7    Dated: ___1/9/0Y___              _____
                                              JOHN DAVIDSON
8                                             Supervising Deputy Attorney General
                                              455 Golden Gate Avenue, Suite 11000
9                                             San Francisco, CA  94102

10                                            Attorneys for Plaintiff People of the State of California ex
                                              rel. California State Water Resources Control Board and
11                                            California Regional Water Quality Control Board, San
                                              Francisco Bay Region
12

13

14   Dated:_____          _____
                                              BRUCE H. WOLFE
15                                            Executive Officer
                                              California Regional Water Quality Control Board, San
16                                            Francisco Bay Region

17

18   Dated:_____          _____
                                              DOROTHY R. RICE
19                                            Executive Director
                                              California State Water Resources Control Board
20

21

22

23

24

25

26

27

28

     STIPULATED ORDER           Page 41 of 42

1    WE HEREBY CONSENT to the entry of this Stipulated Order:

2    For Plaintiff People of the State of California ex rel. California State Water Resources Control
     Board and California Regional Water Quality Control Board, San Francisco Bay Region:

3

4                                    EDMUND G. BROWN JR.
                                     Attorney General of the State of California
5

6

7    Dated:_____        _____
                                     JOHN DAVIDSON
8                                    Supervising Deputy Attorney General
                                     455 Golden Gate Avenue, Suite 11000
9                                    San Francisco, CA 94102

10                                   Attorneys for Plaintiff People of the State of California ex
                                     rel. California State Water Resources Control Board and
11                                   California Regional Water Quality Control Board, San
                                     Francisco Bay Region
12

13

14   Dated: _January 9, 2009_        _____
                                     BRUCE H. WOLFE
15                                   Executive Officer
                                     California Regional Water Quality Control Board, San
16                                   Francisco Bay Region

17

18   Dated:_____         _____
                                     DOROTHY R. RICE
19                                   Executive Director
                                     California State Water Resources Control Board
20

21

22

23

24

25

26

27

28

STIPULATED ORDER                     Page 41 of 42

1   WE HEREBY CONSENT to the entry of this Stipulated Order:

2   For Plaintiff People of the State of California ex rel. California State Water Resources Control
3   Board and California Regional Water Quality Control Board, San Francisco Bay Region:

4                                       EDMUND G. BROWN JR.
                                        Attorney General of the State of California
5

6
    Dated:_____
7                                       _____
                                        JOHN DAVIDSON
8                                       Supervising Deputy Attorney General
                                        455 Golden Gate Avenue, Suite 11000
9                                       San Francisco, CA  94102

10                                      Attorneys for Plaintiff People of the State of California ex
                                        rel. California State Water Resources Control Board and
11                                      California Regional Water Quality Control Board, San
                                        Francisco Bay Region
12

13

14  Dated:_____
                                        _____
15                                      BRUCE H. WOLFE
                                        Executive Officer
16                                      California Regional Water Quality Control Board, San
                                        Francisco Bay Region

17

18  Dated:_____        _Dorothy R. Rice_____
                                        DOROTHY R. RICE
19                                      Executive Director
                                        California State Water Resources Control Board
20

21

22

23

24

25

26

27

28

---

STIPULATED ORDER                    Page 41 of 42

1   WE HEREBY CONSENT to the entry of this Stipulated Order:

2   For Defendant East Bay Municipal Utility District:

3

4

5   Dated: *January 8 2009*

6

        DENNIS M. DIEMER
        General Manager
        East Bay Municipal Utility District

7

8

9       JYLANA D. COLLINS (State Bar No. 107949)
10      VERONICA Y. FAUNTLEROY (State Bar No. 111506)
        CRAIG S. SPENCER (State Bar No. 78277)
        Office of General Counsel
11      East Bay Municipal Utility District
        375 Eleventh Street
12      Oakland, CA  94607-4240

13      BRIAN S. HAUGHTON (State Bar No. 111709)
        DONALD E. SOBELMAN (State Bar No. 184028)
14      Barg Coffin Lewis & Trapp, LLP
        350 California Street, 22nd Floor
15      San Francisco, California 94104-1435

16      Attorneys for Defendant, East Bay Municipal Utility
        District
17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED ORDER                    Page 42 of 42



**EBMUD Wastewater Subbasins**
EXHIBIT A